UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

AVERY GREEN                          )
                                     )
                                     )
v.                                   )          1:11-cv-37/1:09-cr-88
                                     )          *Judge Curtis L. Collier*
UNITED STATES OF AMERICA             )

## MEMORANDUM

In this post conviction action, Avery Green ("Green") seeks to have his federal sentence[1]

vacated, set aside, or corrected pursuant to 28 U.S.C. § 2255 (Criminal Court File Nos. 42, 43).[2]

Green raises six claims—three ineffective assistance of counsel claims, two due process claims, and

one claim relating to the Fair Sentencing Act of 2010 (Criminal Court File No. 43). The government

filed its response (Criminal Court File No. 55), and the Court concluded, that before ruling on the

§ 2255 motion, an evidentiary hearing was required on Green's claim that defense counsel failed to

perfect a direct appeal pursuant to his instruction for her to do so. Counsel was appointed to

represent Green during the evidentiary hearing on this claim. The Court conducted the evidentiary

hearing on October 10, 2012, and the case is now ripe for review.[3]

The motion, together with the files and record in this case, and the evidence presented at the

evidentiary hearing, conclusively show Green, who has the burden of proof on his claims, fails to

---

[1]     The undersigned is familiar with Green's prosecution and sentencing since the undersigned presided over his criminal case.

[2]     Each document will be identified by the Court File Number assigned to it in the underlying criminal case.

[3]     Mr Bryan Hoss accepted the appointment to represent Mr. Green in the evidentiary hearing on this claim. The Court appreciates Attorney Bryan Hoss' acceptance of the case and his efforts on Mr. Green's behalf. Mr. Hoss' obligation pursuant to the appointment has concluded.

satisfy his required burden and therefore his § 2255 must be **DENIED** (Criminal Court File No. 42).

## I.    NON-DISPOSITIVE MOTION

Green filed a motion to amend his § 2255 pleading to add a claim that this Court relied upon inaccurate information regarding the drug quantity attributed to him (Criminal Court File No. 51). Green's judgment of conviction was filed on April 19, 2010, and became final fourteen days later, on May 3, 2010, because no direct appeal was filed (Criminal Court File No. 38).    Therefore, Green's one year statute of limitation for filing a timely § 2255 motion expired on May 3, 2011. Green's motion to amend was filed on August 17, 2011, a little more than three months after his one year statute of limitations had expired (Criminal Court File No. 51).    Accordingly, Green's proposed amendment to his § 2255 motion is untimely because it was filed more than one year after his judgment of conviction became final and, as explained below, it does not relate back to his timely filed § 2255 motion.    *See Howard v. United States*, 533 F.3d 472, 475-76 (6th Cir. 2008) (noting that a motion to amend will be denied where it is filed after the expiration of the statute of limitations unless it relates back to the date of he original pleading).

Rule 15 states that an amendment may "relate back" to the date of the original pleading if the proposed claim "arose out of the conduct, transaction, or occurrence set forth in the original pleading.    Fed.R.Civ.P. 15(c)(2).    Green's original § 2255 motion alleged this Court relied on inaccurate information regarding the number of qualifying predicate offenses for his career-offender classification, and in his motion to amend, he alleges the Court relied on inaccurate information regarding the drug quantity attributed to him (Criminal Court File No. 51).    The basis for Green's new inaccurate-drug-quantity claim is different than his timely inaccurate-qualifying-predicate-convictions claim.    Because Green's new inaccurate-quantity-of-drugs claim does not share a

"common core of operative facts" with his timely claim of inaccurate-qualifying-predicate-convictions, and because nothing in the record reflects this is a situation where equitable tolling should apply, his motion to amend will be **DENIED** as untimely (Criminal Court File No. 51).

## II.    BACKGROUND

### A.    Underlying Criminal Conviction

Green was indicted on May 27, 2009, and charged with six counts of distributing a mixture and substance containing a detectable amount of cocaine base, or "crack" in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Criminal Court File No. 3).  On June 12, 2009, the government filed an information under 21 U.S.C. § 851, notifying Green that upon conviction for an offense contained in the indictment, his sentence would be increased based on his prior felony drug convictions (Criminal Court File No. 11).  Although counsel had been appointed to represent Green, counsel soon was replaced by a retained attorney, Michelle M. Benjamin, who represented him thereafter (Criminal Court File No. 20, Order of Substitution).

On December 9, 2009, Green pleaded guilty to Count Four of the indictment charging him with knowingly, intentionally, and without authority distributing 5 grams or more of a mixture and substance containing a detectable amount of cocaine base or "crack."  The Presentence Report ("PSR) reflects Green had a total offense level of 34 and a criminal history category of VI.  In addition, he qualified as a career offender pursuant to United State Sentencing Guidelines (USSG) § 4B1.1(b), which also resulted in a criminal history category of VI.  Thus, Green's guidelines were 262 to 327 months.

On April 8, 2010, the Court sentenced Green below his guideline range to 240 months (Criminal Court File No. 35). Because Green was not asked to admit or deny his prior convictions

that were used to enhance his sentence, Green's sentencing hearing recommenced on April 15, 2010, at which time the Court corrected the oversight and resentenced him to 240 months imprisonment (Criminal Court File No. 37). On February 16, 2011, Green filed this timely *pro se* § 2255 motion raising, *inter alia*, a claim that counsel failed to file a direct appeal as directed and requesting the Court to restore his appellate rights.

### B.      Procedural Background of § 2255 Motion

Following initial consideration of Green's timely filed § 2255 motion, as required by Rule 4 of the Rules Governing Section 2255 Proceedings for the United States District Courts, the Government was directed to file a response (Criminal Court File No. 42). The government's response did not resolve Green's claim he made a specific request of his counsel to file an appeal after the initial sentencing hearing and confirmed with her after his re-sentencing that she was still going to file an appeal. Therefore, because resolution of the claim in Green's favor would have resulted in permitting him to file a delayed direct appeal, thus rendering resolution of the other claims unnecessary, the Court scheduled an evidentiary hearing on the sole claim that defense counsel provided ineffective assistance by failing to follow his instruction to file a notice of appeal.

The evidentiary hearing was held on October 10, 2012. At the conclusion of the evidentiary hearing, Green's counsel waived filing a post-hearing brief, and instead, made a closing argument. The government waived both a closing argument and filing a post-hearing brief.

After reviewing the record, the applicable law, and the evidence presented at the hearing, the Court concludes, as explained below, Green has not satisfied his burden of proof on any of his claims, and the § 2255 motion will be **DENIED** in its entirety (Criminal Court File No. 42).

### III.     ANALYSIS

Green raises six claims: (1) Counsel was ineffective for failing to file a notice of appeal as directed; (2) Counsel was constitutionally ineffective at sentencing in three instances; (3) Green was denied due process when the Court allegedly failed to explain its sentencing decision; (4) Counsel was ineffective for failing to object to the Court's treatment of the Federal Sentencing Guidelines as reasonable;[4] (5) Green was denied due process when the Court relied on the government's inaccurate claim that Green had three qualifying convictions to meet the career criminal status to which counsel failed to object (Criminal Court File No. 42), and (6) the Fair Sentencing Act of 2010 should be applied to his sentence (Criminal Court File No. 43). The Court will address the ineffective assistance of counsel claims raised in Green's § 2255 motion first, before turning to the due process and application of the Fair Sentencing Act of 2010 claims.

In this § 2255 proceeding, Green has the burden of establishing his claims by a preponderance of the evidence. *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). The Court will address the ineffective assistance of counsel claims separately, after discussing the applicable law.

A.    **Ineffective Assistance of Counsel Claims–Applicable Law**

The Supreme Court, in *Strickland v. Washington*, 466 U.S. 668 (1984), established the criteria for determining whether a Sixth Amendment claim of ineffective assistance of counsel is meritorious. The *Strickland* test requires a defendant to demonstrate two essential elements: (1) counsel's performance was deficient, i.e., below the standard of competence demanded of attorneys in criminal cases; and (2) counsel's deficient performance prejudiced the defense, i.e. deprived the

---

[4]    Although Green raised this as a separate ineffective assistance of counsel claim, because it attacks counsel's performance during sentencing, it will be analyzed under the general claim that counsel was constitutionally ineffective at sentencing.

defendant of a fair trial rendering the outcome of the trial unreliable. *Id.* at 687-88; *see also Flippins v. United States*, 808 F.2d 16, 17-18 (6th Cir.), *cert. denied*, 481 U.S. 1056 (1987).

The standard by which a court reviews counsel's performance is highly deferential, and there is a strong presumption counsel's conduct was within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689; *Sims v. Livesay*, 970 F.2d 1575, 1579-80 (6th Cir. 1992). "[R]eviewing court[s] must remember that 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Wong v. Money*, 142 F.3d 313, 319 (6th Cir.1998), (quoting *Strickland v. Washington*, 466 U.S. at 690.) "An error of counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the [ultimate] judgment." *Id.* at 691.

Where a Sixth Amendment claim of ineffective assistance of counsel is made in a § 2255 proceeding in the context of a guilty plea, the prejudice prong of the *Strickland* test is adjusted. Therefore, a defendant is required to allege and show there is a reasonable probability that, but for counsel's errors and deficient performance, he would not have pleaded guilty, and he would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985) ("[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." ). To demonstrate a reasonable probability that a defendant would have gone to trial requires evidence–apart from a lone assertion–that, absent counsel's error, he would have done so. *See Parry v. Rosemeyer*, 64 F.3d 110, 118 (3d Cir.1995) ("A defendant alleging ineffective assistance of counsel in the guilty plea context must make more than a bare allegation that but for counsel's error he would have pleaded not guilty and gone to trial."), *cert. denied*, 516 U.S. 1058 (1996).

The two-prong *Strickland* standard does not apply to a claim that counsel failed to follow a specific request to file a direct appeal. Rather, a defendant who proves an attorney failed to follow a specific request to file a direct appeal, demonstrates, *per se*, counsel was ineffective. *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998) ("[T]he failure to perfect a direct appeal, in derogation of a defendant's actual request, is a *per se* violation of the Sixth Amendment").

### 1. *Failure to File an Appeal*

Green claims counsel ineffectively failed to appeal his sentence as directed. Counsel contends Green never directed her to file an appeal. Therefore, the issue before the Court is whether Green has proven, by a preponderance of the evidence, that he directed counsel to file an appeal.

As previously stated, an attorney who fails to file an appeal on behalf of a client who specifically requests it, *per se,* acts in a professionally unreasonable manner. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) ("We have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable"); *Ludwig v. United States,* 162 F.3d at 459. Therefore, such an omission, if proven, is constitutionally deficient performance as a matter of law. *Id.* ("When counsel fails to file a requested appeal, a defendant is entitled to a new appeal without showing that his appeal would like have had merit") (citations and internal punctuation omitted).

### a. Green's Evidentiary Hearing Testimony

Green, the first witness to testify at his evidentiary hearing, testified he instructed Ms. Benjamin to file an appeal after the April 8, 2010, sentencing hearing because, in his opinion, he received too much time (240 months)–he expected a 10-year sentence since he proffered to the government. Green also stated that counsel had told him his guideline range would be 10 years to

7

life (this was actually the statutory range) but his United States Sentencing Guidelines ("USSG") range was 262 to 327 months.[5]  Green further explained that counsel said she expected him to get around 12, 13, or 14 years because he assisted the government (Criminal Court File No. 66, p. 8).[6] According to Green, after his April 8, 2010, sentencing hearing, Ms. Benjamin told him to write a list of issues he wished to appeal and she would come by the jail to discuss it with him.  Ms. Benjamin never made it to the jail and there is no evidence Green ever mailed her the list of issues he wished to appeal.  Green received a letter before the April 15, 2010, hearing from Ms. Benjamin informing him that he would be resentenced on that date (Criminal Court File No. 66, pp. 7-10).

Green testified he asked counsel, after the second sentencing hearing, if she was still going to file his appeal.  Green, however, did not elaborate as to the details of the discussion after he requested her to file an appeal.  Rather, he testified he went to the jail and waited on her, and then attempted to contact her by phone but to no avail.   Green also explained he had his mother call Ms. Benjamin, and when counsel and his mother spoke, counsel explained that Green had no grounds on which to appeal (Criminal Court File No. 66, p. 14).

Green wrote Ms. Benjamin a letter which she received on or about May 4, 2010, wherein he stated "I need you to do 1 more thing for me[.]" (Government Exhibit 1).  Green requested Ms. Benjamin to contact "Johnson"[7] and give him the detailed information on four people which he provided in the letter.  Green explained that he proffered with the government and expected to have

---

[5]       Contrary to his testimony, Green wrote Ms. Benjamin a letter wherein he stated, "just want you to know if they make me do 15 or 20 im [sic] still going to keep my head high" (Government Exhibit 5).

[6]       Notably, the government did not file a § 5K1.1 motion on Green's behalf.

[7]       Chad Johnson was one of the agents present during Green's proffer session (Criminal Court File No. 66, p. 26).

his sentence reduced since his proffer sessions resulted in the government making three or four arrests.[8]  There was no mention of an appeal in the letter.

Green wrote Ms. Benjamin another letter, which she received on June 25, 2010, wherein he requested that she send him some documents from his case so he could file an appeal.[9]  Green's letter to counsel which she received on July 14, 2010, inquired about the Rule 35 motion, and another letter in August 2010 discussed his cooperation and request that counsel file a Rule 35 motion (Government Exhibit 2).  Although Green testified he had written other letters, no evidence was presented to substantiate his claims.

On cross-examination, Green acknowledged he went into the sentencing hearing knowing the bottom of his guideline range was 262 months but since he had cooperated with the government through his proffer, he did not expect to get 262 months or the amount of time that he received i.e., 240 months (Criminal Court File No. 66, p. 23).  Green explained that since the statutory sentence was ten years to life and since he proffered to the government, he "figured [he] could get ten." (Criminal Court File No. 66, p. 37, Government Exhibit No. 5).[10]  Green further explained,

---

[8]        Green stated that, at some point, Ms. Benjamin was in contact with the Assistant United States Attorney and the agent regarding Green's cooperation and filing a Rule 35 motion, but once he informed counsel he filed a § 2255 motion against her, he did not hear anything further from her (Criminal Court File No. 66, p. 15).

[9]        Counsel testified there was a letter in July 2010 from Green which was not introduced into evidence.  According to her testimony, the letter stated Green was disappointed she did not file an appeal even though he wanted her to.  Counsel explained she was very upset because this statement was a "total lie[]" and that, although she wrote a response while she was upset, she told her secretary not to send it at the time, but to let her cool off.  Counsel never mailed the letter (Criminal Court File No. 66, pp 71-72).

[10]       Although no details were provided during the hearing, the government did not file a § 5K1.1 motion on Green's behalf or a subsequent Rule 35 motion.  Nevertheless, Green believed the government should have filed a § 5K1.1 or Rule 35 motion and further believed his sentence should have been no more than 120 months, and apparently, has attempted to achieve that goal by

I'm stuck with a whole lot of time and I ain't got no choice but to fight. And if it takes to where I got to fight to try to get my sentence, that's - - that's what I got to do. I can't accept 240 months. That's time- - My son is out there growing up by hisself [sic]. Of course I made mistakes in my past. But everybody change, you know. . . .

And for me to get 20 years for my past, for something that's small, like, it's not right. I understand I done been in trouble, but it's not right. And because I done made a mistake, can't nobody say that I can't change.

Before I had a child in my life, it really - - like, I didn't really care, because I really had nothing to live for. Today I got something to strive for. So if I'm not going to get no time off by the - - the agents lying to me and telling me they going to give me time off for a reduction, I got to fight.

(Criminal Court File No. 66, pp. 38-40).

### b. Flora Bynum's Evidentiary Hearing Testimony

Green's next witness was his mother, Flora Bynum. Ms. Bynum testified she asked Ms. Benjamin if she was going to file an appeal after the April 8, 2010, sentencing hearing, because Green "was given a lot of time." (Criminal Court File No. 66, p. 47). Counsel told Ms. Bynum she would go the jail and talk to Green about it, but counsel never did. Ms. Bynum could not recall whether she had a conversation with Ms. Benjamin about filing an appeal after the April 15, 2010, hearing, although she testified she continued to call counsel's office to see if she was going to file Green's appeal. Ms. Bynum did not know how long between the April 15, 2010, sentencing hearing and the date Ms. Benjamin told her Green had no grounds to file an appeal, but she testified, on cross-examination, such a conversation did take place (Criminal Court File No. 66, p. 49-52, 57).

On cross-examination Ms. Bynum testified she continued to call Ms. Benjamin, checking on whether her son was going to receive any benefit from his proffer session with the government.

means of this § 2255 motion.

Ms. Benjamin responded to Ms. Bynum's inquiries by sending an inquiring email to the Assistant United States Attorney and Chad Johnson.

Ms. Bynum was asked whether she had a conversation with Ms. Benjamin, during which Ms. Bynum explained that Green "had to say these things about requesting an appeal in order to get his sentence reduced?" (Criminal Court File No. 66, p. 58). Ms. Bynum admitted she had a conversation with counsel but said she told counsel "Avery hated to have to do that, I said, but he had - - he had to get his appeal back. That's the only way he could do that, was, he had to file against her because she didn't do what she was supposed [sic] to do." (Criminal Court File No. 66, p. 58). But Ms. Bynum denied suggesting Green was being untruthful in his claims and could not recall when the conversation took place, explaining that she called counsel's office numerous times, with the content of the calls mainly involving whether Green's cooperation would pay off (Criminal Court File No. 66, pp. 58-59).

c. Brittany Lynn Hale's Evidentiary Hearing Testimony

Ms. Hale is the twenty-five year old mother of Green's child. Ms.Hale testified she called Ms. Benjamin's office numerous times to see what was going on with Green's case and to see if counsel intended to file an appeal. According to Ms. Hale, after the April 15, 2010, sentencing hearing, Ms. Benjamin said she was going to see if Green had grounds for appeal. Ms. Hale then changed her testimony saying Ms. Benjamin said she was going to file an appeal and when asked why she thought counsel said she was going to file an appeal, Ms. Hale explained "[b]ecause that's what she was supposed [sic] to do" (Criminal Court File No. 66, p. 63). On cross examination, Ms. Hale first denied and then admitted Green asked her to call Ms. Benjamin to inquire about a sentence reduction. On cross examination, Ms. Hale agreed that, after the sentencing hearing, Ms. Benjamin

11

said she would determine whether Green had grounds for appeal (Criminal Court File No. 66, p. 65-66).

d. <u>Trial Counsel's Evidentiary Hearing Testimony</u>

The government presented Michelle Benjamin, Green's criminal defense attorney, who testified that although Green was initially sentenced on April 8, 2010, he was resentenced on April 15, 2010, to permit the Court to ask Green whether he admitted or denied his prior convictions (Criminal Court File No. 66). Ms. Benjamin remembered only one conversation with Green concerning an appeal, which occurred after the second sentencing hearing, when she visited with Green in the United States Marshal's lockup area. Green voiced his displeasure with his twenty-year prison sentence, and counsel explained that the Court had been generous in imposing a sentence below Green's guideline range. Green questioned counsel about the applicability of the expected change in the crack/powder guideline range and she advised him that she did not believe it would offer him any relief since he qualified as a career offender. Counsel advised Green he could file an appeal if he wanted to be safe and protect that claim.

Ms. Benjamin adamantly denied that Green ever asked her to file an appeal and she equally was adamant in denying ever advising him she would file an appeal on his behalf (Criminal Court File No. 66, p. 70). Ms. Benjamin characterized Green's claim he told her to file an appeal as an "absolute lie" (Criminal Court File No. 66, p. 72). Ms. Benjamin became aware that Green was alleging that he had told her to file an appeal when she received a letter from him in June or July of 2010, in which he stated he was disappointed and he wanted her to file an appeal (Criminal Court File No. 66, p. 71).

Ms. Benjamin explained that, though she was in contact with Green's mother, Ms. Bynum,

12

after the sentencing, Ms. Bynum never questioned her about filing an appeal. Ms. Benjamin also testified that, in reference to the instant claim, Ms. Bynum told her that Green was "sorry about what he did, but he had to do it because that's the . . . only way he can try to get out." (Criminal Court File No. 66, p. 75). Ms. Benjamin told Ms. Bynum "[b]ut, you know, lying on me, you know, that's just not right." Ms. Bynum responded that Green was "stressed out" and he was "stressing [her] out." (Criminal Court File No. 66, p. 75).

Ms. Benjamin testified she was shocked to read Ms. Bynum's affidavit claiming they discussed the filing of an appeal because they never talked about an appeal (Criminal Court File No. 66, p. 87). Ms. Benjamin ended her testimony by reiterating she "never told [Green she would] file an appeal for him" (Criminal Court File No. 66, p. 96).

### e. Discussion

Green claims he directed counsel to file an appeal after the April 8, 2010, sentencing hearing because he received too much time. On April 15, 2010, Green claims he asked counsel if she was still going to file an appeal and she said "yes" (Criminal Court File No. 66, pp. 11-12). Green admits he knew he only had fourteen days to file a notice of appeal (Government Exhibits 1, 3, & 4).[11] Green also admits, however, that his letter to counsel in early May 2010, shortly after his last sentencing hearing, and his June and July letters do not mention her filing an appeal on his behalf or include any inquiry about the status of his appeal. Rather, in the May letter, Green thanks Ms.

---

[11]    At April 8, 2010, sentencing hearings, the Court advised Green of his appeal rights, and Green acknowledged his understanding of those rights. The Court specifically explained to Green that he had the right to appeal the sentence, and if he wished to appeal, he must file his notice within fourteen days from the sentencing date. In addition, the Court explained that if Green could not afford an attorney to represent him on appeal, the Court would appoint counsel to represent him (Criminal Court File No. 69, p. 21). In the second hearing, the Court reminded Green of his right to appeal (Criminal Court File No. 70, p. 8).

Benjamin for a book she sent him, tells her what a great person and lawyer she is, discusses his intention to stand strong even when he gets down, and announces he is going to turn his life around. The majority of the letter, however, contained information he wanted counsel to pass along to Agent Johnson to add to his proffer session (Government Exhibit 1).

In the June correspondence, Green requests some documents from his criminal case so he can file an appeal, but there is no mention of counsel filing or failing to file an appeal.[12]  In the July 2010 letter, he notified counsel that arrests had occurred as a result of his proffer session and requests counsel to check on the filing of a motion to reduce his sentence (Government Exhibits 3 & 4).

Green's testimony regarding the discussion about filing an appeal is vague and his credibility is questionable.  In addition, Green had a strong motive for untruthfulness at the evidentiary hearing–to extricate himself from his 240-month sentence; a sentence which he believes should be cut in half.

Ms. Benjamin, however, was very specific, direct, and credible in testifying that Green never directed her to file an appeal, and she never told him she would do so.  In addition, Green's letters to counsel after his last sentencing hearing do not support his contention he directed counsel to file an appeal, but, inferentially, support counsel's testimony that she was never directed to file an appeal and she never told Green she would do so.

In support of his claim, Green presented his own testimony along with that of his mother's,

---

[12]      Notably, there is no inquiry in these letters about the status of Green's appeal or complaint that counsel failed to file an appeal as directed and as she promised.  Quite simply, the letters contain nothing which indicates he had directed counsel to file an appeal and she failed to do so (Government Exhibits 1-4).

and his child's mother. None of his witnesses, however, could describe the exact discussion that person had with counsel or what issues counsel agreed to raise on appeal. Rather, their testimony consists of vague, factually unsupported allegations that counsel said she would file an appeal. Green offers no contemporaneous physical evidence to buttress his claim. There is no evidence in his letters he ever directed counsel to file an appeal or that she agreed to do so. Rather, as previously noted, the letters, at least inferentially, cut against Green's position.

Based on the evidence presented at the hearing, including Ms. Benjamin's more credible testimony, the Court concludes Green did not receive ineffective assistance of counsel in violation of the Sixth Amendment. Accordingly, the Court **DENIES** Green relief on his claim.

### 2. *Failure to Advocate a Lower Sentence*

Green next accuses counsel of failing to prepare for the sentencing hearing, which he claims resulted in her failure to advocate effectively for a lower sentence. Green supports this claim with several arguments–the first being that counsel failed to request a lower sentence on the basis of the parsimony provision of § 3553(a)(6) (regarding disparity of sentences) and *Kimbrough v. United States*, 552 U.S. 85 (2007) (discussing that it is proper for district courts to take account of sentencing practices in other courts in an effort to prevent unwarranted sentencing disparities). Green contends counsel could have cited these sources to support a position that a lower sentence was required to avoid an unwarranted disparity between her client's sentence and those of similarly situated defendants. In his second argument, Green claims counsel was ineffective for failing to assert his career-offender classification overstated the seriousness of his criminal history. Finally, Green accuses counsel of failing to provide supporting authority and argument for the request to adopt the lower crack/powder ratio in calculating his sentence.

Green acknowledges, as he must, that counsel's motion for a downward variance alleged that application of the career-offender Guidelines would "over-punish" him, that "the crack:powder ratio should be 1:1," and that § 3553(a) authorized a lesser sentence. Moreover, Green indeed did receive a downward variance based on counsel's advocacy. Green's guidelines were 262-327 months, but, as a result of counsel's argument during sentencing, the Court imposed a 240-month sentence, granting counsel's motion for a variance. Nevertheless, Green argues counsel failed to provide any facts to support the claims and that, had she submitted additional argument and authorities to the Court, he would have received a lesser sentence (Criminal Court File No. 42; Criminal Court File No. 34–Motion for Downward Variance). Green's assertions, however, are simply incorrect.

Before addressing the individual ineffective assistance of counsel claims, the Court observes that, in relation to these ineffective assistance of counsel claims, contrary to the standard identified in *Hill v. Lockhart*, Green has neither alleged nor demonstrated a reasonable probability that, but for his counsel's alleged error and deficient performance he would not have pleaded guilty and would have insisted on going to trial on all of the charges against him. Indeed, Green does not seek to have the entire plea agreement set aside nor does he deny his involvement with the quantity of drugs for which he was sentenced. Rather, Green seeks to keep and retain all of the benefits of his plea agreement that accrued to him, including his three level reduction for acceptance of responsibility and his below-the-guidelines sentence, while at the same time he attempts to challenge his sentence, and have the Court resentence him based on his alleged eligibility for a lower sentence for which counsel failed to argue. Consequently, Green has failed to demonstrate prejudice in relation to his ineffective assistance of counsel claims. Moreover, for the reasons explained below, Green has failed to demonstrate counsel's performance was deficient.

16

a. <u>Need to Avoid Disparity in Sentences</u>

Green claims § 3553(a)(6) and *Kimbrough v. United States,* 552 U.S. 85 (2007) requires the Court to consider the need to avoid unwarranted disparities among similar defendants with similar records when imposing a sentence. Green faults counsel for failing to make such an argument.

This claim is frivolous, as it is contravened by the record. The need to avoid disparities in sentences was considered by the Court before pronouncing sentence in both sentencing hearings. Thus, even if counsel failed to present such an argument, which she did not, *see* Criminal Court File No. 34-Motion for Downward Variance, Green suffered no prejudice as the Court considered the need to avoid unwarranted disparities before imposing the first sentence and the second one as well. During the first sentencing hearing, the Court specified it considered, among other things, the sentencing factors listed in 18 U.S.C. § 3553(a), which necessarily includes § 3553(a)(6), in arriving at an appropriate sentence during the first sentencing hearing (*See* Criminal Court file No. 69, p. 4). Further, during the second sentencing hearing, the Court explained in further detail that people in similar circumstances who commit the same crime ought to receive something of a similar sentence (*See* Criminal Court File No. 70, pp. 6-7).

As required, the Court considered the § 3553(a) factors, which includes the need to avoid unwarranted sentencing disparities among defendants, before sentencing Green. In light of the Court's consideration of all the sentencing factors, Green has not demonstrated counsel's alleged failure to bring any individual factor to the Court's attention, including counsel's alleged failure to remind the Court of its job to avoid unwarranted sentencing disparities among defendants, resulted in any prejudice to him.

Not only was there no prejudice, but the record clearly demonstrates Green reaped a benefit

as a result of counsel's effective advocacy during Green's sentencing hearing i.e., Green received

a sentence 22 months below his advisory range. Accordingly, this claim will be **DENIED**.

b. <u>Career Offender Status Overstated His Criminal History</u>

Green faults counsel for not arguing his career offender classification overstated his criminal

history because his prior drug convictions do not suggest he was a "high level drug dealer." Green

would not have benefitted from such an argument because a qualifying predicate offense for Career

Offender within the meaning of USSG § 4B1.1 of the guidelines only requires a defendant to have

been convicted of at least two prior felony convictions of either a crime of violence or a controlled

substance, and the prior drug conviction must be a felony conviction involving a controlled

substance.

According to the presentence report, Green was adjudged guilty of felony possession of

cocaine for resale on February 24, 2003, of sale of a schedule II controlled substance (felony) on

August 13, 2003, and felony possession of over .5 grams of Cocaine on August 13, 2003 (PSR ¶ 43,

37, and 38). Contrary to Green's claim, the August 13, 2003, conviction for feloniously possessing

over .5 grams of cocaine does qualify as a predicate offense for purposes of a career offender under

USSG § 4B1.1.[13] Green qualifies as a career offender under USSG § 4B1.1 of the guidelines, thus,

his criminal history is not overstated. Consequently, Green, who qualifies as a career offender and

was sentenced below his guideline range, would have received no further benefit from this Court

during sentencing had counsel argued he was not a "high level drug dealer." Relief will be

---

[13]      The statute under which Green was convicted, Tenn. Code Ann. § 39-17-417 (a)(4) provides, "[i]t is an offense for a defendant to knowingly: . . . [p]ossess a controlled substance with intent to manufacture, deliver or sell the controlled substance." The conviction qualifies as a predicated controlled substance offense.

**DENIED** on this claim.

c. <u>Crack/Cocaine Ratio</u>

Next, Green complains that counsel failed to present an argument to support her contention that the crack/cocaine ratio should be 1:1. Counsel did raise such a claim in her motion requesting a downward variance and argued the law permitted judges to impose lower sentences based on the unfairness of the 100 to 1 crack cocaine ratio (Criminal Court File No. 34). Moreover, the Court understood it could disagree with § 2D1.1(c) (which sets the crack/powder ratio) and was at liberty to impose a downward variance if it so chose. The Court, however, was not required to impose a sentence at variance with the guidelines nor was it required to base Green's sentence on the proposed crack/cocaine 1:1 ratio. Nevertheless, the Court did impose a sentence at variance with the guidelines. Consequently, Green is unable to demonstrate prejudice based on these allegations. The sentence imposed was below his guidelines and even if counsel had specifically requested the Court to implement a 1:1 ration during the sentencing hearing, the result would have been the same.

Accordingly, Green is **DENIED** relief on the claim that counsel was ineffective for failing to make a crack/cocaine ratio argument.

d. <u>Failing to Object to Court's Treatment of Guidelines as Presumptively Reasonable</u>

In the final claim of ineffective assistance of counsel, Green faults Ms. Benjamin for failing to object to the Court treating his guideline sentence, particularly the career offender provision, as if it were presumptively reasonable. Green has provided citations to the record to illustrate his claim. Those citations encompass quoted portions of the Court's explanation at sentencing to illustrate his

19

claim that the Court presumed the guidelines were reasonable. However, none of Green's citations to the record shows that the Court presumed the guidelines were reasonable or mandatory.

This is the law which governs this issue: "In order for a defendant's sentence to be procedurally reasonable, the district court cannot presume that the sentencing range recommended under the Guidelines is mandatory or even reasonable." *United States v. Herrera-Zuniga*, 571 F.3d 568, 582 (6th Cir. 2009) (citing *Gall v. United States*, 552 U.S. 38 (2007) (for the principle that sentencing judges "may not presume that the Guideline range is reasonable")).

The Court clearly followed the law and did not presume reasonableness where it was prohibited from doing so. The Court explained the purpose of the career offender provision, that one of the indicators of recidivism is a persons past criminal history, and that Green's three prior felony convictions suggests he is a person for which the provision was intended. Moreover, the transcript reflects the Court stated it understood Green's guidelines and "that these guidelines and this guideline range is merely advisory and it is not binding on the Court." (Criminal Court File No. 69, p. 4). The Court further stated that it would consult the guidelines and the guideline range in the presentence report and would take them into account, as well as the 18 U.S.C. § 3553(a) sentencing factors, to arrive at an appropriate sentence. The Court did not presume either the guidelines or the career criminal provision were reasonable or mandatory, but noted the guidelines were advisory. The Court concluded that, given the purpose of the career offender provision and based on Green's prior criminal history and the facts of his case, the career provision should be applied to him.

As reflected in the transcript of the sentencing hearing, the Court did not mechanistically follow the guidelines, but considered Green's circumstances before ultimately concluding the career provision applied to him and that his sentence should be below his guideline range (Court File No.

69). The Court imposed a sentence that is a "variance" from the advisory Guidelines which is not authorized by the guidelines, rather than a departure, which is authorized under the guidelines, further suggesting the Court did not presume the guidelines were mandatory or reasonable. *See Irizarry v. United States*, 553 U.S. 708 (2008) (describing the difference between a variance and a departure).

Green has failed to demonstrate any procedural error committed by the Court and therefore, necessarily has failed to demonstrate counsel was deficient for failing to object to the Court's supposed sentencing error. Accordingly, Green will be **DENIED** relief on the claim that counsel was ineffective for failing to object to the Court's treatment of the Guidelines.

In sum, Green has failed to show his counsel was ineffective during his sentencing hearing. Although Green continues to believe his 240-month below guideline sentence is too high, nothing he claims his counsel should have done would have convince the Court to impose a lower sentence; thus, he demonstrates no prejudice.

### B. Court Errors

Green contends the Court committed two errors. First, he maintains the Court failed to explain its reasons for imposing the 240-month sentence. Second, Green claims the Court relied on inaccurate information i.e., that he had three prior convictions that qualified him for career offender status under USSG § 4B1.1

#### 1. *Reasons for Imposing 240-Month Sentence*

Green claims the Court failed to explain its reasons for imposing the 240-month sentence. According to Green, the Court failed to state whether it was giving him a variance or departure. Green, however, quotes the Court as specifically stating it was granting defense counsel's motion

and imposing a non-guideline sentence. Because defense counsel filed a motion for downward "variance" and the Court granted her motion, Green's 240-month sentence is a variance.

Green contends this Court should vacate sentence and grant him a new sentencing hearing and provide a more definitive statement of the reason for the sentence because, according to Green, if he appeals his sentence, the Sixth Circuit will have to vacate his sentence and remand it for a more definitive explanation. First of all, this claim is procedurally defaulted, as it was a claim that should have been raised on appeal, but was not. Second, Green has not provided any cause to excuse his procedural default. But, aside from any procedural default, the Court, in fact, did explain its reasons for imposing a non-guideline sentence.

Before pronouncing sentence, the Court began its explanation by noting that Green had three prior drug convictions and based on his prior criminal history he was "the prime person that the career offender provision was intended for." (Criminal Court File No. 69, pp. 16-17). Next, the Court pointed out that defense counsel had "some compelling points" on his behalf, the most important of which was a change in his life–the birth of his child while he was incarcerated pending disposition of his federal criminal case and his wish to be there for his child as he grows up. The Court noted, however, it looks to the type of commitment Green has made to his child. Which, in Green's case, noting the child was born when Green was incarcerated, there was no evidence of a commitment. In addition, the Court took into account the effect that the absence of Green's father had on him as well as well as Green's extensive history of arrests and troubled behavior before he reached the age of 18. The Court explained all the factors it considered, including its duty not to impose a sentence greater than necessary to achieve the four purposes of a sentence, announced it would grant the defense motion for a variance and would impose a non-guidelines sentence, and

then imposed a 240 month sentence (Criminal Court File No. 69, p. 18).

In addition, during the April 15, 2009, sentencing hearing, the Court again explained that it considered that Green probably would not have committed these crimes if he had realized he would be removed for almost the entirety of his child's life; the need to treat people who committed crimes similarly to others in similar circumstances who committed the same crime; that Green would be missing the majority of his child's childhood; and other factors argued by counsel in the first hearing before deciding to impose the same non-guidelines sentence of 240 months–a sentence almost 22 months below his guidelines.

Thus, contrary to Green's claim, the Court did explain its reasons for imposing the 240-month sentence. Accordingly, Green will be **DENIED** relief on his claim that the Court failed to explain its reasons for imposing the 240-month sentence.

### 2. *Prior Felony Convictions*

In his next claim, Green contends the Court relied on inaccurate information i.e., that he had three prior convictions that qualified him for career offender status under USSG § 4B1.1. Green maintains his third conviction for felony possession of a schedule II controlled substance over .5 grams of cocaine does not have an element of distribution. Green claims counsel failed to object to this alleged inaccurate information.

Green's "distribution" argument is flawed. A prior felony conviction of a controlled substance offense qualifies under USSG § 4B1.1 if the offense is "punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution or dispensing of a controlled substance . . . " § 4B1.2(b). Here, the challenged state conviction was for violating Tenn. Code Ann. § 39-17-417 (a)(4) which provides, "[i]t is an offense for a defendant to

23

knowingly: . . . [p]ossess a controlled substance with intent to manufacture, deliver or sell the controlled substance." The violation of this statute is a Class B felony. Tenn. Code Ann. § 39-17-417(b). Therefore, this conviction qualifies as a predicate offense for career offender within the meaning of USSG § 4B1.1 of the guidelines. Accordingly, because the Court properly considered the prior felony drug conviction, and counsel was not ineffective for failing to launch an objection and argue the conviction did not contain a distribution element, this claim will be **DENIED** as it lacks merit.

### 3. *Application of the Fair Sentencing Act of 2010*

As the Court understands the argument in Green's supplement to his § 2255 motion, he is seeking application of the Fair Sentencing Action of 2010, , Pub. L. No. 111-220, 124 Stat. 2372 ("FSA") to his sentence (Criminal Court File No. 43).

On August 3, 2010, Congress passed the FSA that, *inter alia*, reduced the statutory penalties for crack cocaine offenses and the disparity in federal criminal penalties between powder and crack cocaine offenses. Specifically, the Act amends the sentencing provisions in 21 U.S.C. § 841(b)(1) by raising from 50 grams to 280 grams the amount of crack necessary to trigger the 10 year mandatory minimum sentence, and raising the amount from 5 to 28 grams necessary to trigger the 5-year minimum. 21 U.S.C. §§ 841(b)(1)(A)(iii) and (b)(1)(B)(iii). *Dorsey v. United States*, ___ U.S. ___, 132 S.Ct. 2321, 2329 (2012).

On June 12, 2012, the United States Supreme Court held that the Act's mandatory minimum sentencing provisions apply to all sentences imposed on or after the enactment date of August 3, 2010, regardless of when the offense conduct occurred. *Dorsey v. United States*, 132 S.Ct. at 2335. In *Dorsey*, the Supreme Court held that the FSA applies to those who committed crimes prior to the

passage of the Act, but were sentenced after the August 3, 2010, effective date.

The Act does not apply to Green, who committed his offense involving 47.3 grams of crack cocaine between April 2008 and April 2009, but was sentenced on April 8 and 15, 2010, before the August 3, 2010, effective date of the act. Because Green's sentence was imposed before the enactment date of August 3, 2010, the FSA offers him no relief. Accordingly, Green will be **DENIED** relief on his FSA claim.


IV.     **CONCLUSION**

Based on the record, including evidence presented at the hearing and the parties' filings, the Court concludes Green has failed to establish any of his claims raised in his § 2255 motion. The record simply does not support any of Green's claims. Accordingly, Green's § 2255 motion will be **DENIED** in its entirety and this matter will be **DISMISSED**.

SO ORDERED.

ENTER:


**/s/**_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**

25